A. M. and L. M. STARR, Respondents, *v.* BENJAMIN STARK, Appellant.

*Appeal from Multnomah County.*

1. A patent for land from the United States may be attacked and set aside for fraud.
2. What color of title sufficient to give one a sufficient standing to impeach patent.
3. Residence and cultivation, under the donation law of 1850, what?
4. Effect of a patent issued to the city of Portland.

BENJAMIN STARK claimed a part of the town site of the city of Portland, as a donee under the act of Congress of 27th September, 1850, donating lands to actual settlers in Oregon. The fourth section of that act provides that, in order to obtain a patent from the United States, the settler shall first reside on and cultivate the tract claimed for four years continuously. The act further provides that a notification of the tract claimed, describing the land and stating the time of settlement, shall be filed with the surveyor-general, and the fact of a continual residence and cultivation for four years be proven to the satisfaction of that officer; and when such continual residence and cultivation is proved, a donation certificate from the surveyor-general shall be furnished the settler.   Stark obtained a donation certificate from the said surveyor-general, dated September 1st, 1853, in which is the following recital of the proof: After describing the land, the certificate says that said Stark, "having proven to the satisfaction of the surveyor-general of Oregon the fact that such settlement was commenced on the 1st day of September, 1849, four years prior to the date hereof, and having, in pursuance of the requirements of the seventh section of the act aforesaid, established by two disinterested witnesses the fact of continual residence and cultivation, required by the fourth section of said act," &c.   In accordance with this certificate, a patent

Starr *v.* Stark.

was issued to Stark on the 8th day of December, 1860, in which patent reservations are made in favor of such tracts as are occupied by persons for commercial purposes within the limits covered by the patent. The day before the patent to Stark was issued, *to wit:* on the 7th day of December, 1860, a patent was issued to the authorities of the city of Portland, in trust, for the several use and benefit of the occupants thereof, according to their respective interests, under the town site act of Congress of the 23d of May, 1844, entitled " An act for the relief of citizens of towns upon the lands of the United States, under certain circumstances." The complainants, the Starrs, say that Stark threatens to eject them from the lots in question, *to wit:* Lots numbers one, two and four, in block number eighty-one; that they have been in the constant occupation of said lots since 1849, using them as places of business for the purposes of trade and commerce, and claim that they have a right to have their title perfected under the city patent; and further say, that the reason they have not had such title perfected, is that the legislature of the State of Oregon has passed no law to enable the city authorities of Portland to fulfill said trust.

Stark claims that said patent to the city is without authority in law, and can give claimants no standing in court to claim under it.

From the decree of the Circuit Court Stark appeals.

*Strong & Wait*, of counsel for appellant.

*W. W. Chapman, Esq.*, of counsel for respondents.

Boise, J.   Without undertaking to discuss the question as to the validity of the patent to the city, as against that to Stark, had it been obtained without fraud against the government, I think the claimants, being actual occupants of these lots in good faith, and occupying them, for purposes of trade and commerce, have a sufficient color of title under the patent of the city to give them a standing in a court of equity to

impeach if they can, the patent to Stark, on the ground that the same was obtained from the government by fraud.

The fraud alleged in the complaint is, that the written evidence of four years, actual residence and cultivation produced by Stark to the surveyor-general, on which the donation certificate was issued, was false and fraudulent; and that in fact Stark had not, on the 10th of September, 1853, remained on, and cultivated said tract for four years.

The court, after having examined the evidence in this case, finds that the findings of the facts in the case by Judge Shattuck, who tried the case in the court below, are correct, and for convenience I shall adopt them here, as follows: *Facts*— That the defendant had, during the time between September, 1849, and September, 1853, a mercantile house on the claim of John H. Couch, adjoining the tract claimed by defendant, a mercantile house in San Francisco, California, and one in New York, in co-partnership with another person; was himself a merchant, and in actual charge, and managing partner of the house in San Francisco. It is not found that defendant had any house, residence or place of business upon the tract covered by his patent prior to the fall of 1850. That up to 1851 the defendant was engaged in mercantile business and commerce between Portland, San Francisco and New York, but spent the greater portion of his time at San Francisco, between September, 1849, and September, 1850. That the defendant was in Portland, Oregon, in June, 1850 and in August, 1850, one Sherman, an agent of the defendant, commenced the construction of a building upon the tract described in defendant's patent, which was afterwards used as an office, and was occupied by defendant's agent; but it is not found that defendant himself ever occupied this building, if at all, prior to October, 1850. That defendant left Oregon in October, 1850, and was absent in the Atlantic States, and in California until somewhere in 1857, but with the intention of returning to Oregon, and of making a home on the tract named in his patent. That prior to his departure in October,

Starr *v.* Stark.

1850, the defendant caused a dwelling house to be erected on the tract, which was leased to a tenant, and occupied by a tenant till defendant's return in 1857, and occupied by defendant himself as a boarding place or residence, from his return till 1861. "That portions of the tract were, prior to March, 1850, divided into lots and were occupied at that time, and have been up to the commencement of this suit occupied for purposes of trade and commerce." "That a part of the premises in controversy, to wit: Lot number two, was occupied by the plaintiffs in October, 1850, and has continued to be occupied by them till the commencement of this suit for the purpose of manufacturing tinware.

"That the other portions of the premises in dispute have been occupied by and in actual possession of the plaintiffs and their grantees, claiming adversely to the defendant, since some time in the early part of 1850.

"That the plaintiffs were in possession of all they claim in the complaint on the 7th of December, 1860," the date of the patent to the city of Portland.

From this finding of the facts, it is obvious that Stark had not resided on and cultivated the land described in his patent, for four years, on the 10th of September, 1853, the date of his donation certificate, for he had no house or place of residence on the land before the fall of 1850, so that the testimony by which he was enabled to obtain his donation certificate from the surveyor-general of Oregon was not true in fact; and whether the witnesses who testified to these facts were mistaken, or willfully false, makes no difference. It was a fraud on the government and on the plaintiffs.

As to the question of residence and cultivation, they must be actual on some portion of the land, and the possession of the whole tract must be an adverse possession; that is to say, a possession that gives the claimant control of the whole premises as occupier or landlord. As the patent refers to and is issued on the donation certificate, we cannot inquire into the question of the right of Stark to complete his residence

after the date of his certificate; and as the patent of Stark is void for the reason that his residence was not completed at the time of the granting of the donation certificate. The act of Congress, relative to citizens occupying town sites for the purposes of trade and commerce, applies to this land, and the patent to the city, being unimpeached by a better title, will be held valid in this case, so far as to protect the title of the plaintiffs.

Decree affirmed.

NOTE.—This case was reversed in the Supreme Court of the United States at the December term, 1867. That court, among other points, held thus: " The mere naked possession of the plaintiff is not sufficient to authorize him to institute the suit, and require an exhibition of the estate of the adverse claimant, though the language of the statute is, that 'any person in possession, by himself or his tenant, may maintain' the suit. His possession must be accompanied by a claim of right that is founded upon title, legal or equitable, &c.

"If the town site act was not in force in Oregon before the right of Stark to a patent of his donation claim became perfected, the reservation of the patent was inoperative and void. The right became perfected when the certificate of the surveyor-general and accompanying proofs were received by the commissioner of the general land office, and he found no valid objection to them. That is to say, if the donation act of 1850 was applicable to the lands, his right to a patent became perfect when the certificate of the surveyor and accompanying proof showed, in the judgment of the commissioner, a compliance with its requirements.

" The town site act of 1844 was not extended to Oregon until the 17th day of July, 1854, and even then it only operated to exclude lands occupied as town sites or settled upon for the purposes of business or trade, from a donation claim which had not been previously surveyed. Before the passage of this act, the claim of defendant, Stark, had been surveyed, and the required proof of his settlement and continued occupation and residence made, and such steps had been taken as to perfect his right to a patent. The lands embraced by his claim had then ceased to be the subject of purchase from the United States by any person, natural or artificial. The right to a patent once vested is treated by the government, when dealing with the public lands, as equivalent to a patent issued. When in fact the patent does issue, it relates back to the inception of the right of the patentee, so far as it may be necessary, to *cut off intervening claimants.*"

" It follows, from the views expressed, that the plaintiff derived no title or estate in the premises in dispute, by force of the patent to the corporate authorities of the city of Portland." (*S. C. Rep.*, 1869.)